## No. 12,085.

KLUG ET AL. *v.* HENRYLYN IRRIGATION DISTRICT ET AL.

(291 Pac. 820)

Decided June 30, 1930.   Rehearing denied September 15, 1930.

Mr. JAMES E. GARRIGUES, Mr. NORTON MONTGOMERY, Mr. ERSKINE MYER, for plaintiffs in error.

Mr. FRED R. WRIGHT, Mr. GAIL L. IRELAND, for defendants in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THIS litigation arose over conflicting claims to water for irrigation.   Plaintiffs in error are hereinafter referred to as Klug and the trust company, and defendants in error as the district, Ireland, and the land company, respectively.

The district brought this suit against Klug, Ireland, the land company, and others including irrigation offi-

cials, asking that certain of Klug's decrees be modified or held void; that certain of his alleged appropriations be held abandoned; that a decree in his favor be so interpreted as to limit his use of other water to an economical supply of his needs; and for the injunctive relief appropriate and necessary to enforce those orders. The amended complaint was filed November 3, 1925, and is divided into four causes of action. Six months later Klug and the trust company filed an answer containing the appropriate admissions, denials and affirmative allegations to support their prayer for dismissal at plaintiffs' costs. August 30, 1926, Ireland filed his answer and cross-complaint in which he makes substantially the same charges against Klug, sets out his own alleged rights, asks that they be decreed herein, and closes with a prayer similar to that of the district. The answer and cross-complaint of the land company follow the same lines. Such other pleadings were filed as were necessary to form the issues, the cause was tried to the court, and findings and decree entered March 31, 1927. In the main that decree finds the facts alleged by the district and grants the relief demanded by it. To review that judgment Klug and the trust company prosecute this writ.

There are nine volumes, of some 6000 folios, in this bill of exceptions. There are over 1300 printed pages of abstract and approximately 400 pages of briefs, while 20 typewritten pages are devoted to the findings and decree. As might be supposed, all this indicates an investigation of vastly wider scope than we could possibly justify here, and countless details whose ramifications we have been obliged to follow, but of which a proper disposition of the cause requires no notice. A brief glance at the topography of the scene is, however, essential to an understanding of what we must say of the controversy.

The waters here involved all are, or are alleged by some of the parties to be, flood waters, and all have some relation to Box Elder creek. This is a dry gulch prob-

ably rising in Elbert county, crossing Adams, and running thence approximately 90 miles north and nine miles east to a point about a mile and a quarter east of Kuner, a station on the Union Pacific railroad in Weld County, where it empties into the South Platte river. Its lower valley ranges, roughly, from one to two miles wide. Going up this valley from the river we come to the mouth of one of its tributaries, the West Box Elder, which heads about eight miles above on the west. Klug's lands lie largely in this fork. Some 11 miles above this point, and constructed across the channel of Box Elder, is Klug's reservoir No. 3. Above this on the main stream, or its tributaries, are located the numerous other reservoirs and catch basins of these parties, most of which are calculated to hold the flood waters of a considerable territory, all of which would, but for these structures, pass down the main bed to the river. The lands of the district lie about six miles above those of Klug and within the south eight miles of Weld county. Like the parent gulch, all the Box Elder tributaries are dry. Only in early spring, or times of occasional heavy precipitation, do these arroyas lose their arid character and carry the priceless waters which are the subject of this long protracted and vigorously contested litigation. It is undisputed that at Klug's lands the channel practically disappears, "flattens out" as the witnesses say. Below them it reappears and is sufficiently marked to carry water on to the river.

The controversy which culminated in this action began in 1922, and came to a head in August, 1925, as the result of unusual floods.

In a water adjudication, begun in 1900 and reaching decree in 1914, Klug was awarded 500 cubic feet per second, of date May 1, 1899, for his "Meadow Ditch" (which was really the Box Elder itself) to supply approximately 1300 acres of land, and 80 cubic feet, of date February 22, 1906, for his No. 2 ditch (a small ditch some five miles above the other) to supply 640 acres of

land. At the same time the district's predecessor obtained a conditional decree, of date April, 1909, for storage water for Bootleg reservoir located on the Box Elder in Adams county. Each of these decrees, as the court found, were for flood waters only. The district had a ditch taken out of the Platte near Denver, carrying river water through the upper reaches of the Box Elder valley, touching Bootleg reservoir on its lower side, but not entering it, passing through Horse Creek reservoir to the east, running thence irregularly many miles north, doubling back south along the west side of its lands as far as the county line, and thence passing easterly. From this ditch and the district's reservoir, and later works, considerable seepage developed which by 1921 had, at least at times, made of the Box Elder a running stream from Bootleg reservoir to Klug's lands. Following the 1925 floods, Klug demanded the water decreed him in 1914, and the officials attempted to comply with that demand. The district, Ireland, and the land company, claiming Klug had abandoned much of this water and could not now use it without the grossest waste, resisted. Thus this suit was born.

Klug constructed his reservoir No. 3 in 1922. It has an embankment about 30 feet high and 2900 long, a concrete outlet 2x2 feet, rising in the center of its archway to 3 feet high, through which, as the court found, from 10 to 100 cubic feet of water per second only can pass, and a spillway over which it is not possible to carry water down the Box Elder.

The district's first cause of action sought the nullification of Klug's 1914 decrees for want of jurisdiction; the second cause of action for fraud; the third for abandonment; the fourth the construction of those decrees as a practical nullity because grossly excessive.

The court dismissed the first, second and fourth causes of action for want of evidence, and sustained the third on the ground that Klug, by the construction of his reservoir No. 3, had made permanently impossible the

use of his appropriations decreed in 1914, save as to 90 cubic feet per second thereof, and made such injunctive orders as protected Klug to so much of those appropriations. This ruling gave to Ireland and the land company all they demanded save only a decree for their alleged appropriations. To grant that relief would be equivalent to converting this injunction suit into a general or special water adjudication. We know of no authority supporting such action and think the trial court properly relegated these parties to the usual statutory proceeding.

In addition to said decrees which Klug obtained in 1914 for his two ditches, he obtained conditional decrees for two reservoirs. The question of abandonment of these was in issue here. The evidence is overwhelming that no work was ever done by him to perfect his rights under those conditional decrees and that those reservoirs were abandoned, and the court so found.

Counsel for Klug say he could use the natural stream as a distributing ditch; that it was the state engineer's duty to release to him any of his water wrongfully stored by the district; that his irrigation of hay meadow and pasture land was cultivation; that the use of a stream bed as a reservoir is not of itself unlawful; and they cite many authorities to support these propositions. In general they are correct and their authorities are good law, but since they do not touch the question of abandonment they require no comment. It is contended that the court's limitation of Klug's 1914 decrees to flood waters was erroneous and numerous authorities in support thereof are cited. Since none of these relate to appropriations of flood waters, only from otherwise dry creeks, they have no application to the conditions here presented. At the date of Klug's appropriations there was neither seepage nor return waters in this section, no source from which they could arise, and no reason to contemplate their future appearance.

On the question of abandonment Klug says it

consists of non-use coupled with intent not to repossess; that these must be established by clear and convincing evidence; that non-use of a ditch does not constitute an abandonment of a right; that a change of a conduit is permissible; and that failure to protest another's wrongful use of his water does not prove abandonment by the owner; and many authorities are cited to support these propositions. The statements are, in general, correct and the authorities so cited are good law. But since none of these touch the question of the effect of a water user's voluntary act which of necessity makes it permanently impossible for him to use his decreed appropriation, they require no comment. We can conceive of no higher evidence of abandonment than this. It is non-user coupled with the presumption of permanence, and proof of intent more persuasive than any mere oral declaration could possibly be. It is comparable to proof of a man's abandonment of his right hand by voluntarily cutting it off.

On the question of evidence of abandonment it is contended that the construction by Klug of his reservoir No. 3 did not make it impossible for him to use more than 90 cubic feet per second of his decreed appropriations; that the spillway of the reservoir would permit water to pass over it and down the Box Elder to Klug's lands; and that other of the court's findings of fact are erroneous. That there is some evidence to support these contentions must be admitted, but that there is substantial evidence to support the court's findings is certain, and that such evidence is overwhelming we think is borne out by the record. No good purpose can be served by further detailing, dissecting, and discussing it. Briefly stated, this resolves itself into a simple case of findings of fact based upon conflicting evidence, which findings a fundamental rule requires us to uphold.

The judgment is accordingly affirmed.

MR. JUSTICE BUTLER and MR. JUSTICE CAMPBELL not participating.